**ORIGINAL**

# In the United States Court of Federal Claims

No. 13-966 C
Filed: August 5, 2014

**FILED**

AUG − 5 2014

U.S. COURT OF
FEDERAL CLAIMS

```
*****************************************
                                        *
                                        *
                                        *
LAWRENCE M. JIRON,                      *
                                        *
        Plaintiff, pro se,              *
                                        *
v.                                      *
                                        *
THE UNITED STATES,                      *
                                        *
        Defendant.                      *
                                        *
                                        *
                                        *
*****************************************
```

Frivolous lawsuits;
Jurisdiction;
Motion to Dismiss, RCFC 12(b)(1);
*Pro Se*;
RCFC 53 (masters).

**Lawrence M. Jiron**, Sterling, Colorado, Plaintiff, *pro se*.

**Ryan M. Majerus**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Judge*.

## I.    RELEVANT FACTUAL BACKGROUND.[1]

On September 26, 2012, a jury in the Fremont County District Court in the State of Colorado ("Colorado State Court") convicted Lawrence M. Jiron ("Mr. Jiron" or "Plaintiff") for an Attempt to Influence a Public Servant, pursuant to C.R.S. § 18-8-306, and Retaliation Against a Judge, pursuant to C.R.S. § 18-8-615. *See Falk*, 2013 U.S. Dist. LEXIS 110511 (ECF No. 39-1 at 11-12). On January 14, 2013, the Colorado State Court sentenced Mr. Jiron to "concurrent terms of twelve years in prison on each count." *Id.* at *3.

---

[1] The relevant facts discussed herein were derived from the December 9, 2013 Complaint. The court's citation to the Complaint reflects the atypical pagination therein, where pages are intermittently numbered 1, 2, 2a, 3, 3a and so forth. The court's factual discussion also is informed by the following prior cases: *Jiron v. Thorson*, No. 13-1524, 2014 U.S. App. LEXIS 3993 (10th Cir. Mar. 4, 2014); *Jiron v Colorado*, No. 13-cv-01328-BNB (D. Colo. May 23, 2013); *Jiron v. Falk*, No. 13-306, 2013 U.S. Dist. LEXIS 110511 (D. Colo. Aug. 6, 2013).

On February 6, 2013, Mr. Jiron filed a Motion for a Writ of Habeas Corpus in the United States District Court of Colorado.[2] *Id.* (ECF No. 4). In that motion and subsequent filings, Mr. Jiron asserted that his claim for relief was justified, because: (1) the statutes under which he was convicted were unconstitutional, as they were published without an enacting clause; (2) the Colorado State Court is a privately-owned entity and, as such, has no jurisdiction; (3) Colorado officials kidnapped Mr. Jiron and have subjected him to false imprisonment; and (4) his constitutional rights have been violated. *Id.* (ECF No. 22 at 5A–6E; ECF No. 39 at 2).

On February 12, 2013, Mr. Jiron filed a notice of appeal in the Colorado Court of Appeals, challenging the validity of his conviction. *Id.* (ECF No. 39-2 at 1).

On May 21, 2013, Mr. Jiron filed a Complaint in the United States District Court for the District of Colorado against the State of Colorado and certain state officials. *See Jiron v. Colorado*, No. 13-cv-01328-LTB (D. Colo. May 23, 2013). This Complaint was the first in a subsequent series of lawsuits against state officials and entities, alleging the unconstitutionality of certain Colorado laws. *See, e.g., Jiron*, 2014 U.S. App. LEXIS 3993, at *2 ("The gist of Plaintiff's action against the Defendants is that he (Plaintiff) was prosecuted, convicted and sentenced pursuant to Colorado statutes which he claims are 'worthless,' invalid, and fail 'to carry any force of law' because they do not 'have an attached enacting clause' under the Colorado Constitution."), *aff'g*, 2013 U.S. Dist. LEXIS 171740 (D. Colo. Dec. 5, 2013).

On August 6, 2013, the United States District Court of Colorado denied the Motion for a Writ of Habeas Corpus, because Mr. Jiron's appeal of the September 26, 2012 conviction by the Colorado State Court was pending in the Colorado Court of Appeals, and as such, he had not yet exhausted his state court remedies. *See Falk*, 2013 U.S. Dist. LEXIS 110511, at *6; *see also id.* (ECF No. 39 at 3–4).

## II.   PROCEDURAL HISTORY.

On December 9, 2013, Mr. Jiron filed a Complaint in the United States Court of Federal Claims alleging several state and federal causes of action arising from the following events, *i.e.*, that a Colorado jury convicted him of violating Colorado statutes that were alleged to be unconstitutional, because they did not contain an enacting clause, as allegedly was required by the Constitution of the State of Colorado. Compl. 3–3b. The December 9, 2013 Complaint alleges that the court has jurisdiction to adjudicate this claim under the United States Constitution, the Seventh Amendment, "common law," as well as 28 U.S.C. §§ 1346, 1495, 1331, 1332, 1343, and 1337. Compl. 3.

The state-law causes of action include: (1) tort claims (Compl. 2, 3, 3a); (2) a contracts claim (Compl. 2, 12, 18–20), and (3) a claim alleging that Colorado state officials violated separation-of-powers requirements of the Constitution of the State of Colorado (Compl. 16). The tort claim alleges actual malice, misrepresentation or fraud, and false imprisonment. Compl.

---

[2] On February 5, 2013, Plaintiff filed a letter with the United States District Court for the District of Colorado, requesting U.S. Marshalls to rescue him from prison, which did not satisfy the requirements for a formal filing. *See Falk*, 2013 U.S. Dist. LEXIS 110511 (ECF Nos. 1, 3).

2.  The contract claim apparently is that Colorado state courts, as business entities, violated contract law by enforcing invalid statutes. Compl. 12, 18–20. The separation-of-powers claim is apparently that the Attorney General of Colorado, a state executive branch official, unlawfully defended a Colorado state official in a court proceeding. Compl. 16.

The federal-law causes of action include claims founded on: federal statutes (Compl. 10, 17); the United States Constitution (Compl. 4); and federal criminal law. Compl. 4. As bases for the federal statutory claims, the December 9, 2013 Complaint lists Acts of Congress, including the Clayton Act of 1914, the Sherman Act of 1890, and the Sarbanes-Oxley Act of 2002. Compl. 2. The December 9, 2013 Complaint alleges that Colorado courts are subject to those Acts, because they are regulatory agencies, statutory corporations, privately-owned entities, revenue-collecting agencies, or commercial courts under the Uniform Commercial Code. Compl. 10. The December 9, 2013 Complaint further alleges violations of the First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution. Compl. 4. In addition, the December 9, 2013 Complaint includes a claim for criminal kidnapping. Compl. 36.

To remedy these claims, Plaintiff requests the court overturn the United States District Court for the District of Colorado's determination in *Falk*, 2013 U.S. Dist. LEXIS 110511, at *3–4, that the Attorney General of Colorado lawfully could represent the prison warden in a habeas petition (Compl. 16).

The December 9, 2013 Complaint, anticipating the Government's sovereign immunity defense, alleges that governmental immunity does not apply, because this case goes to "the safety – peace and dignity of the Colorado people" and Colorado officials and courts "must be held accountable for their actions." Compl. 22.

On December 9, 2013, Plaintiff also filed an Application to Proceed *In Forma Pauperis* that the court granted on January 10, 2014.

On February 3, 2014, Plaintiff filed a document titled "An Appointment of Counsel, or Entry Appointment of Masters to Overse[e] [sic] the Case," that the court construes as a Motion for appointment of counsel and for appointment of a special master pursuant to Rule 53 (hereinafter "Motion For Appointment Of Counsel Or Special Master"). Dkt. 6 at 1–2. Plaintiff, however, asserts no facts nor provides any statutory support, but argues instead that the appointment is warranted, because: (1) Plaintiff is indigent; (2) the case is too important for him to handle on his own; (3) such an appointment would better serve the interests of justice, because the Colorado statutes at issue are unconstitutional; and (4) a special master would have the ability to attend hearings, report regularly to the court, and regulate all proceedings. Dkt. 6 at 1–4. Although Plaintiff appears to have confused the role of a special master with that of counsel, the court will consider these arguments as support for both Motions.

On February 4, 2014, the Government filed a Motion To Dismiss for lack of subject matter jurisdiction and failure to state a claim, pursuant to RCFC 12(b)(1) and 12(b)(6) ("Gov't Mot."). The Government argues the court does not have subject matter jurisdiction, because: (1) the named individuals are state government officials, employees, or judges; (2) the Tucker Act expressly excludes tort claims from the court's jurisdiction; and (3) criminal allegations exceed

3

the court's jurisdiction. Gov't Mot. 2. In addition, the Government argues that the December 9, 2013 Complaint fails to state a claim, because it does not allege sufficient facts to establish the material elements of a viable legal theory. Gov't Mot. 7–8. In addition, the Government states that transfer is not in the interests of justice, because the December 9, 2013 Complaint "is the latest in a series of [Plaintiff's] resource-draining efforts to right perceived wrongs allegedly committed by the Government." Gov't Mot. 9–10.

On February 25, 2014, the Government filed a Notice informing the court that it re-sent a copy of the February 4, 2014 Motion To Dismiss to Plaintiff's corrections facility.[3]

On February 27, 2014, the Government filed a Response to Plaintiff's Motion For Appointment Of Counsel Or Special Master ("Gov't Resp. I"). The Government argues that appointment of counsel is unwarranted, because "this case does not present the sort of 'extreme circumstances' required for this [c]ourt to exercise its ability to appoint counsel in civil cases." Gov't Resp. I at 3. The Government also argues that denial of Plaintiff's Motion would not result in any extreme hardship, because the court does not have jurisdiction to adjudicate any of Plaintiff's claims. Gov't Resp. I at 4.

On March 27, 2014, Plaintiff filed a "Motion Of And For: [sic] An Answer To Defendant's Motion To Dismiss" that the court construes as Plaintiff's Response To The Government's February 4, 2014 Motion To Dismiss. In this pleading, Plaintiff (1) argues that he has standing to bring this suit, (2) explains his understanding of tort law and its apparent connection with this case, (3) provides additional factual and procedural background, (4) argues that the Colorado Court of Appeals erred in dismissing his suit for refusal to serve the Colorado Attorney General ("AG"), because the AG "has no business in a Court Room," (5) asserts the Government's Motion to Dismiss "ramble[d] on gibberish" and was not based on case law or federal statutes, and (6) avers that the Government did not answer the Complaint's allegations of actual malice, misrepresentation, and false imprisonment. Resp. II at 1–5.

On March 28, 2014, Plaintiff filed a "Motion of and for: Entry of Judgment, [sic] pursuant to Rule 58" that requests the court issue judgment in Plaintiff's favor, because he "never received an answer for his complaint[] [although a]n answer is still due." Dkt. 14 at 1. As support, Plaintiff explains the basic compensatory and rehabilitative justifications for tort law and then re-asserts the basis for his tort law and other claims. Dkt. 14 at 2-4. Plaintiff's March 28, 2014 Motion also raises two new claims, including that the Colorado State Court lacked jurisdiction over his case and that the State of Colorado kidnapped him. Dkt. 14 at 3, 6. Plaintiff adds that the central issue in this case is whether Colorado statutes were enacted properly. Dkt. 14 at 5.

On March 28, 2014, Plaintiff first filed a "Motion of and for: Subpoena of Files and Documents." Pursuant to RCFC 45, Plaintiff requests that the court authorize a subpoena for: (1)

---

[3] On March 11, 2014, Plaintiff filed a Notice informing the court that when the Government's return address did not include an attorney number on two occasions, Plaintiff was unable to receive mail. Notice II at 1.

case number 11-CR-18 from the Colorado State Court; and (2) case number 2013-CA-244 from the Colorado Court of Appeals. Dkt. 15 at 1-3.

On March 28, 2014, Plaintiff also filed a "Motion of and for: [sic] Proving an Official Record, Rule: 44," from the Government for "all records [and] documents proving b[e]yond doubt that the Colo. Rev. Stat. are enacted and that th[ese] statutes [sic] carry the force of law." Dkt. 16 at 1. Plaintiff requests these records to be certified under seal by the legal custodian. Dkt. 16 at 1. This request is justified, because the Government has the burden of proof and "must prove b[e]yond doubt the Colo. Rev. Statutes are indeed enacted." Dkt. 16 at 1. After restating his claim as to the illegality of certain Colorado statutes, Plaintiff indicates he intends to seek summary judgment against the Government "if and when the defendants cannot prove the Colo. Rev. Stat. [are] legal." Dkt. 16 at 2.

On March 28, 2014, Plaintiff next filed a Motion For Summary Judgment, restating prior arguments on the merits and insisting that summary judgment is appropriate, because the Government did not file an Answer.

On April 3, 2014, the Government filed a Combined Reply In Support Of Motion To Dismiss And Response To Defendant's Motion For Entry Of Judgment, Motion For Summary Judgment, Motion For Subpoena Of File And Documents, And Motion For Copy Of Official Record ("Gov't Reply"). The thrust of this pleading is that none of Plaintiff's responses provide any substantive basis to deny the Government's February 4, 2014 Motion to Dismiss. Gov't Reply 2. In addition, the Government points out that RCFC 12(b) allows the Government to file a Motion To Dismiss in lieu of an Answer. Gov't Reply 3.

On April 8, 2014, Plaintiff filed a "Motion of and for entry of Declaratory Judgment Rule 57, Rules of Federal Claims," requesting that the court declare certain Colorado statutes "illegal," issue a bond releasing him from prison under terms he specifies, void his criminal conviction, and award damages. Dkt. 20 at 1, 2, 4, 5. In support, Plaintiff argues that "[t]he only option this court has is to enter judgement [sic] against the defendants and stop this tyranny of the Colo. Judges [sic]." Dkt. 20 at 2. Moreover, Plaintiff asserts that the Government will commit fraud if it tries to defend this suit, because the Government has kidnapped him and is imprisoning him on false charges. Dkt. 20 at 2.

On April 21, 2014, Plaintiff filed an "Order" in which he requests the court enter summary judgment against the Government. Dkt. 21 at 4. On April 24, 2014, the Government responded with arguments previously made. Dkt. 22 at 2.

On May 8, 2014, Plaintiff filed a "Motion To Strike: All Of Defendant's Motions Pursuant To: Rule 60(3), (4), (6), (d), (e) [sic]," requesting that the court "vacate" all documents previously filed by the Government, because the court has not issued an "order" granting the Government's Motions To Dismiss, so that the Government "lost jurisdiction on the case" and the Government did not file a timely Answer to Plaintiff's Complaint.

On May 21, 2014, the Government filed a Response to Plaintiff's "Motion to Strike," reviewing the procedural history of the case and reasserting prior arguments.

On June 9, 2014, Plaintiff filed a "Motion Of And For: [sic] Duty Of Defendants To Disclosure [sic]" repeating prior allegations and arguments. Dkt. 25 at 1–4. Therein, Plaintiff issued an ultimatum that the Government either file an Answer or "yield" to him. Dkt. 25 at 4.

On July 28, 2014, Plaintiff filed a (Second) Motion For Summary Judgment that repeats allegations and arguments made in previous filings.

## III.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

Therefore, to pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act . . . ."); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting *Testan*, 424 U.S. at 400). And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

### B.   Standard Of Review For *Pro Se* Litigants.

The pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). It has been the tradition of this court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a

*pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

### C.    Standard Of Review For A Motion To Dismiss Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject-matter jurisdiction"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court generally is "obligated to assume all factual allegations [of the complaint] to be true and to draw all reasonable inferences in plaintiff's favor." *Henke*, 60 F.3d at 797.

### D.    Plaintiff's February 3, 2014 Motion For Appointment Of Counsel Or Special Master Under Rule 53.

Plaintiff requests the appointment of a special master pursuant to Rule 53 of the Rules of the United States Court of Federal Claims ("RCFC"), arguing that this appointment is warranted because: (1) he is indigent, (2) the case is too important for him to handle on his own, (3) appointment would better serve the interests of justice, and (4) a special master would have the capacity, unlike Plaintiff, to attend hearings, report regularly to the court, and regulate all proceedings.

RCFC 53(a) provides, in relevant part, that the chief judge, at the trial judge's behest, may appoint a special master to "*hold trial proceedings* and make recommended findings of fact if appointment is warranted by . . . *some exceptional condition*[.]" RCFC 53(a)(1)(B) (emphasis added). In the court's judgment, the facts Plaintiff asserts, even if true, do not warrant the appointment of a special master under RCFC 53 for two reasons. First, there is no need, at this juncture, to hold "trial proceedings," since the Government's February 4, 2014 Motion To Dismiss, as well as the court's independent obligation to consider subject matter jurisdiction, require the court to consider whether it can adjudicate the claims alleged in the December 9, 2013 Complaint. *See Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1362 (Fed. Cir. 2008) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." (internal quotations omitted)). "Trial proceedings" would only take place in this case if the court has jurisdiction to adjudicate the claims alleged in Plaintiff's Complaint; otherwise, the case must be dismissed. *Id.* ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety[.]" (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). Thus, Plaintiff's request is, at best, premature.[4] Second, there are no "exceptional conditions" present in this case sufficient to justify appointment of a special master. *See In re U.S.*, 185 F.3d 879, at *3 (Fed. Cir. 1998) (concluding that a large number of related cases with "national importance," as well as the "time-consuming and resource-draining nature of the pre-

---

[4] Further, as discussed in detail below, since the court does not have jurisdiction over Plaintiff's claims, the court does not have authority to hold trial proceedings or request the appointment of a master to perform the same.

trial phases of th[ose] interrelated cases" was sufficiently exceptional to warrant the appointment of a special master).

To the extent Plaintiff requests the appointment of counsel, the court also must deny that request. While the United States Court of Federal Claims also may appoint counsel in civil cases, pursuant to 28 U.S.C. § 1915(e)(1),[5] this power "should only be exercised in extreme circumstances." *Washington v. United States*, 93 Fed. Cl. 706, 708 (2010). Extreme circumstances warranting the appointment of counsel may include cases where "quasi-criminal penalties or severe civil remedies are at stake, such as those in a civil commitment proceeding or when an indigent risks losing his or her child in a custody case." *Id.* at 708. Plaintiff's Complaint, alleging causes of action against various officials, employees, and judges in the State of Colorado, simply does not "present an extreme hardship" sufficient to warrant appointment of counsel. *Id.* at 709.

For these reasons, Plaintiff's February 3, 2014 Motion For Appointment Of Counsel Or Special Master, is denied.

### E.   The Court's Resolution Of The Government's February 4, 2014 Motion To Dismiss.

Plaintiff has failed to meet the burden of establishing subject matter jurisdiction for the reasons set forth below.

### 1.   The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Claims Against Individual State Officials.

The December 9, 2013 Complaint alleges several claims against various judges on the Colorado Court of Appeals, and other courts, officers and agencies of the State of Colorado. Compl. 1–2. These include, *inter alia*: (1) that courts in the State of Colorado violated contract law by enforcing invalid statutes; (2) a separation-of-powers claim, alleging that the Attorney General of Colorado unlawfully defended a Colorado official in a court proceeding; and (3) claims alleging the Colorado courts are subject to and violated various federal statutes, including the Clayton Act of 1914, the Sherman Act of 1890, and the Sarbanes-Oxley Act of 2002. Compl. 2, 4, 10–11.

All of these claims are asserted against individual judges, state officials, or agencies of the State of Colorado. The United States Court of Federal Claims, however, does not have jurisdiction to adjudicate those claims. "It is well settled that the United States is the only proper defendant in the United States Court of Federal Claims." *Kurt v. United States*, 103 Fed. Cl. 384, 386 (2012) (dismissing, for lack of jurisdiction, plaintiff's claims against "the state of Missouri, the Missouri judiciary . . . and various unnamed judges of the state of Missouri"); *see also Stephenson v. United States*, 58 Fed. Cl. 186, 190 (2003) (explaining that "the only proper

---

[5] 28 U.S.C. § 1915(e)(1) provides that: "The court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 2503(d) further provides that: "For the purpose of construing section[] . . . 1915 . . . of this title, the United States Court of Federal Claims shall be deemed to be a court of the United States."

defendant for any matter before [the United States Court of Federal Claims] is the United States, not its officers, nor any other individual"); *Moore v. Pub. Defenders Office*, 76 Fed. Cl. 617, 620 (2007) ("When a plaintiff's complaint names private parties, or local, county, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations.").

For these reasons, any and all claims alleged in the December 9, 2013 Complaint against individual governmental officials, judges, and employees of the State of Colorado must be dismissed.

**2. The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Plaintiff's Constitutional Claims.**

The December 9, 2013 Complaint also alleges claims arising under the First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution. Compl. 4.

The United States Court of Federal Claims does not have jurisdiction to adjudicate claims arising under the First Amendment because it is not money-mandating provision of the Constitution. *See United States v. Connolly*, 716 F.2d 882, 886–87 (Fed. Cir. 1983) ("[T]he [F]irst [A]mendment, standing alone, cannot be so interpreted to command the payment of money."); *see also Uzamere v. United States*, Nos. 10-585, 10-591, 2010 WL 3528897, at *3 (Fed. Cl. Sept. 3, 2010) ("This court lacks jurisdiction to consider claims under the First Amendment because it does not mandate the payment of money damages for violations.").

Given the *pro se* status of the December 9, 2013 Complaint, the court construes Plaintiff's claims under the Fifth and Fourteenth Amendments to the United States Constitution as alleging claims under the Due Process Clause or the Equal Protection Clause. But, the United States Court of Federal Claims does not have jurisdiction to adjudicate such claims, because neither clause is money-mandating. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (holding that claims arising under the "Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment . . . [do not form] a sufficient basis for jurisdiction because they do not mandate payment of money by the [G]overnment"); *see also Collins v. United States*, 67 F.3d 284, 288 (Fed. Cir. 1995) (holding that the United States Court of Federal Claims does "not have jurisdiction over money claims that are based upon an alleged violation by the [G]overnment of the [D]ue [P]rocess [C]lause").

Nor does the United States Court of Federal Claims have jurisdiction to adjudicate claims under the Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth Amendments to the United States Constitution. *See LaChance v. United States*, 15 Cl. Ct. 127, 130 (1988) ("[T]he [F]ourth [A]mendment does not mandate the payment of money by the United States."); *Winston v. United States*, 465 Fed. App'x 960, 961 (Fed. Cir. 2012) (holding that claims arising under the Sixth Amendment "fall outside the jurisdiction of the [United States Court of Federal Claims]"); *Jaffer v. United States*, No. 95-5127, 1995 WL 592017, at *2 (Fed. Cir. Oct. 6, 1995) (holding that the "Seventh Amendment [does not] explicitly or implicitly obligate[] the federal [G]overnment to pay damages; as a result . . . [it cannot] support a claim for relief in the [United States] Court of Federal Claims"); *Trafny v. United States*, 503 F.3d 1339, 1340 (Fed. Cir. 2007) ("The [United States] Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment[.]"); *Vuolo v. United States*, No. 06-5136, 2006 WL 3913417, at

9

*1 (Fed. Cir. Dec. 29, 2006) (same re: the Ninth Amendment, because it "do[es] not mandate the payment of money"); *Patterson v. United States*, 218 Fed. App'x 987, 988 (Fed. Cir. 2007) ("[W]e discern no error in the trial court's determination that a claim for monetary damages against the United States cannot be based on the . . . Tenth Amendment[.]").

For these reasons, the constitutional claims alleged in the December 9, 2013 Complaint must be dismissed.

### 3.    The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Tort Claims.

The December 9, 2013 Complaint is captioned as a "Commercial Complaint in Tort," and uses terms throughout that sound in tort law, such as "malice," "misrepresentation," and "false imprisonment." It is well-established, however, that the United States Court of Federal Claims does not have jurisdiction to adjudicate tort claims, because the Tucker Act expressly withdraws those claims from the scope of this court's jurisdiction. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . *in cases not sounding in tort.*" (emphasis added)); *see also Zhao v. United States*, 91 Fed. Cl. 95, 100–01 (2010) (explaining that cases "sounding in tort are not cognizable in the [United States Court of Federal Claims]" (quotation omitted)). Further, the specific claims alleged in the December 9, 2013 Complaint properly are characterized as torts over which the court may not exercise jurisdiction. *See Reforestacion de Sarapiqui v. United States*, 26 Cl. Ct. 177, 179 (1992) (dismissing plaintiff's claims for "misrepresentation, *i.e.*, a tort," for lack of jurisdiction); *see also Vincin v. United States*, 199 Ct. Cl. 762, 765 (1972) ("[P]laintiff's complaint is partially based on a claim of false imprisonment. Such a claim sounds in tort and is outside our jurisdiction.").

For these reasons, the tort claims alleged in the December 9, 2013 Complaint must be dismissed.

### 4.    The United States Court Of Federal Claims Does Not Have Jurisdiction To Review Judgments Of State Courts Or Federal District Courts.

The December 9, 2013 Complaint further requests that the court overturn the United States District Court's determination in *Falk*, 2013 U.S. Dist. LEXIS 110511, at *3–4, that the Attorney General of Colorado lawfully could represent the prison warden in a habeas action. Compl. 16. The Complaint also appears to request that the court review the Colorado State Court's September 26, 2012 conviction of Plaintiff. Compl. 3a (alleging that the Colorado State Court "illegally" convicted Plaintiff under "statutes [that] do not exist"). It is elementary that, among the federal courts, only the United States Supreme Court may review the judgments of state courts. *See* 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari[.]"); *see also Johnson v. Way Cool Mfg., L.L.C.*, 20 Fed. App'x 895, 897 (Fed. Cir. 2001) ("[O]nly the Supreme Court may review state court judgments."); *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1034 (8th Cir. 1999) (explaining that the *Rooker-Feldman* doctrine deprives "lower federal courts [of] jurisdiction to review state court judgments").

If Plaintiff regards the August 6, 2013 decision of the United States District Court for the District of Colorado as improper, the proper recourse was to appeal that decision to the United States Court of Appeals for the Tenth Circuit. In any event, the United States Court of Federal Claims does not have jurisdiction to review decisions of a United States District Court. *See Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (holding that the United States Court of Federal Claims "does not have jurisdiction to review the decisions of district courts" (quoting *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994)).

For these reasons, any claims in the December 9, 2013 Complaint requesting that this court review the decisions of the Colorado State Court or the United States District Court must be dismissed.

### 5. The United States Court of Federal Claims Does Not Have Jurisdiction To Adjudicate Claims Arising Under Federal Criminal Statutes.

The December 9, 2013 Complaint also appears to allege Plaintiff's state court conviction was a criminal act of "kidnapping, slavery, and involuntary servitude," violating federal criminal law. Compl. 3b; *see also* 18 U.S.C. § 1201 (providing that "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom . . . any person" shall be guilty of a federal felony). To the extent Plaintiff asserts the Colorado State Court violated federal criminal law, "the [United States Court of Federal Claims] has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code[.]" *Joshua*, 17 F.3d at 379.

Therefore, the criminal claims alleged in the December 9, 2013 Complaint also must be dismissed.

### 6. The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Most Of Plaintiff's Federal Statutory Claims, And Those Claims That Invoke Applicable Jurisdictional Statutes Are Insufficiently Pled Under Rule 8.

Finally, the December 9, 2013 Complaint and subsequent pleadings filed by Plaintiff cite several other statutes to support the contention that the United States Court of Federal Claims has jurisdiction to adjudicate the claims presented therein.

First, Plaintiff cites 28 U.S.C. § 1346, which provides that United States District Courts, concurrently with the United States Court of Federal Claims, have jurisdiction over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected[.]" 28 U.S.C. § 1346(a)(1). But even under the most liberal reading of the December 9, 2013 Complaint, none of Plaintiff's allegations may properly be construed as a claim for a tax refund, since there are absolutely no facts alleged supporting such a claim. As such, no facts have been pled "plausibly suggesting" an entitlement to relief; in fact, Plaintiff's bare invocation of Section 1346, without *any* supporting facts, does not even contain the information "necessary to sustain recovery under *some* viable legal theory."

11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 562 (2007) (emphasis in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

Second, Plaintiff cites 28 U.S.C. § 1495, which provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned." 28 U.S.C. § 1495. But Plaintiff's claim thereunder fails for several reasons. As an initial matter, although the court has jurisdiction to render judgment on claims by persons "unjustly convicted of an offense against the United States," Plaintiff was not convicted for an offense "against the United States," but for offenses committed against the State of Colorado. *See Falk*, 2013 U.S. Dist. LEXIS 110511 (ECF No. 39-1 at 11-12); *see also O'Neal v. United States*, No. 11-675, 2011 WL 5223154, at *3 (Fed. Cl. Oct. 27, 2011) (dismissing a purported wrongful imprisonment claim alleged under Section 1495, where that claim was asserted against the State of Texas, not the United States). Further, for this court to exercise jurisdiction under Section 1495, a plaintiff's conviction must first be set aside by a court, or the plaintiff must be pardoned for the criminal offenses. *See* 28 U.S.C. § 2513 (requiring that a person "suing under section 1495 . . . must allege and prove that (1) [their] conviction has been reversed or set aside . . . or that [they] have been pardoned"); *see also Humphrey v. United States*, 52 Fed. Cl. 593, 596 (2002) (explaining that jurisdiction under Section 1495 requires strict compliance with Section 2513). Plaintiff is currently a prisoner in the Sterling Correctional Facility located in Colorado Springs, Colorado. *See* Order, *Jiron v. United States*, No. 13-966, ECF No. 4 (Jan. 10, 2014) (granting Plaintiff's Motion To Proceed *In Forma Pauperis* and describing his incarceration). Plaintiff has neither been pardoned, nor had his conviction reversed, and has not complied with Sections 1495 and 2513.

Third, Plaintiff cites 28 U.S.C. §§ 1331 and 1332, as statutes bestowing federal question and diversity of citizenship jurisdiction, respectively, on the United States District Courts. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); *see also id.* § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between," *inter alia*, citizens of different states, and citizens of a state and a foreign state). The United States Court of Federal Claims is not a district court, and since Section 1331 "is limited to district courts, it does not apply to this case." *Houston v. United States*, 60 Fed. Cl. 507, 510 (2004); *Strougher v. United States*, 89 Fed. Cl. 755, 762 (2009) ("[D]iversity jurisdiction [under Section 1332] is not granted to the Court of Federal Claims[.]").

Fourth, Plaintiff invokes 28 U.S.C. § 1343, which authorizes "[t]he district courts" to adjudicate claims arising under certain provisions of the civil rights laws, such as 42 U.S.C. § 1985 (conspiracy to interfere with civil rights). But "[e]xclusive jurisdiction to hear civil rights claims [under Section 1343] resides in the federal district courts," so that this court does not have jurisdiction to adjudicate that claim. *Kortlander v. United States*, 107 Fed. Cl. 357, 369–70 (2012) ("The statute at 28 U.S.C. § 1343(a)(3) (2006) specifically provides for jurisdiction in the United States District Courts. The United States Court of Federal Claims is not mentioned in the statute, and, thus, this court does not have jurisdiction, pursuant to 28 U.S.C. § 1343(a)(3).").

Fifth, Plaintiff cites 28 U.S.C. § 1337, which provides the "district courts" with original jurisdiction to hear certain claims "arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies[.]"  Since this court is not a "district court," again, the United States Court of Federal Claims does not have jurisdiction to adjudicate a claim arising under Section 1337.

As discussed above, although Plaintiff invokes the Sherman Act of 1890, the Clayton Act of 1914, and the Sarbanes-Oxley Act of 2002 as a basis for this court to exercise jurisdiction, the December 9, 2013 Complaint makes clear that any claims thereunder are directed at entities other than the United States Government.  *See generally* Compl. 10–11 (describing the aforementioned congressional statutes and claiming that "all Colorado Courts . . . ,[the] Colo[rado] Secretary of State . . . [and the] Colo[rado] Attorney General" are subject to their provisions).  Where a "plaintiff's complaint names private parties, or local, county, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations." *Moore*, 76 Fed. Cl. at 620.  Therefore, the court need not determine whether the United States Court of Federal Claims may adjudicate claims arising under the aforementioned statutes, as this case is not a bid protest.  *Cf.* 28 U.S.C. § 1491(b)(1) (providing that the United States Court of Federal Claims has jurisdiction "to render judgment on an action by an interested party objecting to . . . *any alleged violation of statute or regulation* in connection with a procurement or a proposed procurement" (emphasis added)).

For these reasons, the statutory claims alleged in the December 9, 2013 Complaint also must be dismissed.

## IV.   CONCLUSION.

For these reasons, the Government's February 4, 2014 Motion To Dismiss is granted. *See* RCFC 12(b)(1).  Given the court's resolution of the Government's February 4, 2014 Motion To Dismiss, all of Plaintiff's other outstanding motions are denied, as moot.  Accordingly, the Clerk of the Court is directed to dismiss the December 9, 2013 Complaint.

In addition, Plaintiff has a lengthy history of filing lawsuits,[6] and other federal courts repeatedly have sanctioned[7] or threatened Plaintiff with sanctions[8] for filing claims considered to

---

[6] *See United States v. Krieger*, 2014 U.S. Dist. LEXIS 32020, at *1 (D. Colo. Mar. 12, 2014) (dismissing a case where Plaintiff attempted to criminally prosecute officials and entities of the state of Colorado by merely listing the United States as Plaintiff and addressing the Complaint to the United States Attorney); *see also Jiron v. Davidson*, 2014 U.S. App. LEXIS 3996, at *3 (10th Cir. Mar. 4, 2014) ("[Plaintiff's] claims are completely frivolous. We accordingly deny his request for a [certificate of appealability for a writ of habeas] and dismiss this matter."); *Jiron v. County of Alamosa*, 1996 U.S. Dist. LEXIS 22962, at *1 (D. Colo. Apr. 24, 1996) (listing eight other cases from the mid-1990s that demonstrate Plaintiff "repeatedly filed requests for entry of default judgments which have no merit").

[7] *See Jiron*, 1996 U.S. Dist. LEXIS 22962, at *1 (recommending injunctive relief barring Plaintiff from filing additional *pro se* lawsuits, unless he first obtained the court's leave);

be without merit. In this case he has filed nearly identical claims to those previously rejected by other federal courts. *See Jiron v. Colorado*, 2014 U.S. Dist. LEXIS 16297, at *1 (D. Colo. Feb. 10, 2014); *United States v. Thorsen*, 2013 U.S. Dist. LEXIS 171740, at *1 (D. Colo. Dec. 5, 2013); *see also People v. Ogburn*, 2007 U.S. Dist. LEXIS 7360, at *1, 2007 WL 389230 (D. Colo. Feb. 1, 2007); *Jiron v. Ogburn*, 2006 U.S. Dist. LEXIS 24812, at *2, 2006 WL 994441 (D. Colo. Apr. 11, 2006). Nevertheless, Plaintiff continues to attempt to prosecute state officials and judges criminally. *See, e.g.*, *United States v. Babcock*, 2014 U.S. Dist. LEXIS 11644, 1 (D. Colo. Jan. 30, 2014) (asserting criminal charges against Judge Babcock, who ruled against him in *Thorsen*, and other defendants).

Based on a review of Plaintiff's claims and correspondence, the court finds that Plaintiff's contacts with this court reflect "indicia of frivolousness and harassment," specifically in both the "number and content of filings" and their lack of merit. *See In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988); *see also Hemphill v. Kimberly-Clark Corp.*, 374 Fed. App'x 41 (Fed. Cir. 2010) (following the guidelines discussed in *In re Powell* concerning anti-filing injunctions for *pro se* litigants).

Pursuant to Rule 11(c)(3) of the Rules of the United States Court of Federal Claims, Plaintiff has thirty (30) days to show cause why the court should not issue an anti-filing injunction. *See also In re Powell*, 851 F.2d at 433 (suggesting that a "district court should consider issuing an order to show cause" before issuing an anti-filing injunction). If Plaintiff does not do so, the Clerk will be further directed to accept no other actions or filings by Lawrence M. Jiron, without an Order of the Chief Judge of the United States Court of Federal Claims. *See* RCFC Rule 11(b) (barring the filing of unwarranted claims).

In the interim, the Clerk's Office will reject any additional complaints from Plaintiff unless accompanied by the court's required filing fee.

**IT IS SO ORDERED.**

_____
**SUSAN G. BRADEN**
**Judge**

---

*Jiron v. County of Alamosa*, 1998 U.S. Dist. LEXIS 23660, at *2 (D. Colo. Sept. 16, 1998) (permanently enjoining Plaintiff from filing new *pro se* suits, unless he first obtained leave).

[8] *See Jiron v. Thorson*, 2014 U.S. App. LEXIS 3993, at *4 (10th Cir. Mar. 4, 2014) ("We caution [Plaintiff] that further frivolous filings in this court may result in sanctions, as have already been imposed on him in the district court.").